```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

WILLIAM A. BAYLES,

                          Plaintiff,      **No. 1:15-cv-01013(MAT)**
                                                  **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                          Defendant.
_____

## I. Introduction

Represented by counsel, William A. Bayles ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

Plaintiff protectively filed applications for DIB and SSI on September 25, 2012, alleging disability commencing January 30, 2011, with a date last insured of December 31, 2014. The claims were initially denied on February 26, 2013, and Plaintiff timely requested a hearing. On April 25, 2014, Administrative Law Judge Donald T. McDougall ("the ALJ") conducted a hearing in Buffalo, New York, at which Plaintiff appeared with his attorney and testified, as did impartial vocational expert Dana Lessne ("the

VE"). On May 23, 2014, the ALJ issued an unfavorable decision. Plaintiff's request for review by the Appeals Council was denied on September 22, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

**III. The ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: herniated discs in the thoracic and lumbar spines and cervical spine pain, status post motor vehicle accident; depressive disorder; and generalized anxiety disorder. The ALJ found that Plaintiff's asthma was non-severe as it was well-controlled with medication.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ gave particular consideration to Listings 1.04 (Disorders of the spine), 12.04 (Affective Disorders), and 12.06 (Anxiety-related disorders).

The ALJ proceeded to assess Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he should have no more than occasional interaction with supervisors; must be able

to change positions briefly (1 to 2 minutes) from sit to stand, or stand to sit, at least every half-hour; cannot perform work involving fast-paced or assembly-line work or other production quotas; and should not be exposed to significant levels of fumes, dusts, gases, or other respiratory irritants.

At step four, the ALJ determined that Plaintiff has past relevant work as a Civil Draftsman (DOT No. 005.281-001, skilled (svp 7), sedentary), but that given his RFC, he cannot perform this job.

At step five, the ALJ found that Plaintiff was a younger individual age 18-49 (31 years-old) on the onset date, with at least a high school education (associate's degree in computer aided design ("CAD")). The ALJ relied on the VE's testimony to find that an individual of Plaintiff's age, and with his education, vocational profile, and RFC, can perform the requirements of the following representative occupations: Cleaner/Housekeeper (DOT No. 323.687-014, unskilled (svp 2)), with light, 439,278 jobs in the national economy, 8,098 jobs in the state economy and 426 jobs in the regional economy; and Cashier II (DOT No. 211.462-010, unskilled (svp 2), light), with 802,926 jobs in the national economy, 46,678 jobs in the state economy, and 3,605 jobs in the regional economy. Accordingly, the ALJ entered a finding of "not disabled."

**IV. Discussion**

   **A. Step Three Error: Failure to Properly Consider Listing 1.04A (Plaintiff's Point I)**

Plaintiff argues the ALJ failed to properly analyze, at step three, whether he meets or medically equals Listing 1.04A, and did not adequately explain his step three finding. The Commissioner argues that Plaintiff's impairments do not meet all of the criteria of Listing 1.04A, and that the ALJ's rationale can be inferred from the remainder of the decision and the undisputed record evidence.

It is the claimant's burden to "demonstrate that [his] disability [meets] 'all of the specified medical criteria' of a spinal disorder." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. at 530. The "absence of an express rationale" for an ALJ's step three finding is not fatal, as long the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence" to find that the determination "was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982).

The Court now turns to the question of whether the medical evidence in the record demonstrates that Plaintiff's impairments meet the requirements of Listing 1.04A, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise

of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The Commissioner does not offer argument with regard to the first and second requirements of Listing 1.04A, "evidence of nerve root compression characterized by neuro-anatomic distribution of pain," and a "limitation of motion of the spine," respectively. However, the Commissioner does challenge Plaintiff's showing on the third requirement, "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." The Commissioner points out that when consultative physician Hongbiao Liu, M.D., evaluated Plaintiff on February 12, 2013, Plaintiff "had a normal gait and he could walk on his heels and toes with only mild difficulty[,]" (T.24), "[h]is squat was 90% of full, and he was able to rise of from a chair without difficulty[.]" (T.24 (citing T.358)). Further, PA-C Amber Nocek at Dr. Frederick Piwko's office noted that, neurologically, Plaintiff did not have any focal deficits and had normal reflexes (T.291, 416, 421, 428, 443); his deep tendon reflexes were intact, his sensation was intact, and his gait displayed no ataxia or

unsteadiness, and no muscle weakness (T.296, 442); he had full range of motion throughout his musculoskeletal system and displayed normal gait and station (T.416, 421, 428). Likewise, orthopedic surgeon Dr. Moreland observed that Plaintiff had negative straight leg raising bilaterally; full upper and lower extremity strength bilaterally; intact sensation in upper and lower extremities; normal and symmetric reflexes in upper and lower extremities and feet; no muscle atrophy, fasciculations, or clonus; and no myelopathic findings. (T.282). The ALJ did not refer to any of the foregoing evidence in his step three discussion, however. Rather, the ALJ's step three analysis amounted to an enumeration of the Listing's the elements and a conclusion that the record does not demonstrate these requirements. (T.20).

As evidence of motor loss, Plaintiff notes that consultative physician Dr. Liu noted "mild difficulty" with heel and toe walking. (T.258). As evidence of reflex or sensory loss, Plaintiff cites to Dr. Liu's observation of decreased right leg sensation compared to the left side. (T.259). In addition, Plaintiff points to the findings of neurologist Dr. Sobhana Narayanan, who conducted an EMG/nerve conduction study on May 1, 2014. On physical examination, Dr. Narayanan found diminished sensation at the bilateral lateral aspect of the lower legs and diminished ankle reflexes bilaterally (T.484). As for the electrophysiological findings, Dr. Narayanan concluded that it was "an abnormal study"

with "evidence consistent with bilateral S1 radiculopathy." (T.485). As Plaintiff notes, the Listing contemplates that an "[i]nability to walk on the heels or toes . . . when appropriate, may be considered evidence of significant motor loss." 20 C.F.R. Part 404, Subpart P, App'x 1, § 1.00E; see also Duran v. Colvin, No. 14 CIV. 8677(HBP), 2016 WL 5369481, at *17 (S.D.N.Y. Sept. 26, 2016) ("[T]he listings specifically state that an inability to walk on one's heels or toes can be considered evidence of 'significant motor loss.'") (citing, inter alia, Norman v. Astrue, 912 F. Supp.2d 33, 80 (S.D.N.Y. 2012) ("With respect to muscle weakness, however, while the medical evidence is not overwhelming—it does indicate that plaintiff may have had some difficulty with walking on his heels or toes and/or squatting."); Olechna v. Astrue, No. 08-CV-398, 2010 WL 786256, at *6 (N.D.N.Y. Mar. 3, 2010) (noting that claimant's "muscle weakness was also documented in his inability or difficulty with heal and toe walking"); other citations omitted)).

While there does not appear to be a well-settled requirement that an ALJ provide an explanation for his conclusion at step three of the analysis, district courts in this Circuit have required an ALJ to provide an explanation as to why the claimant failed to meet or equal the Listings, "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." Kuleszo v. Barnhart, 232 F. Supp.2d 44, 52

(W.D.N.Y. 2002). Such is the case here. As noted above, the Commissioner only challenges Plaintiff's showing of "motor loss," but Plaintiff has pointed to at least some evidence of that requirement. While the Commissioner is correct that there is no evidence of muscle atrophy and that there is conflicting evidence regarding Plaintiff motor functioning, it is nevertheless the obligation of the ALJ to explicitly reconcile this conflicting evidence by evaluating whether Plaintiff meets or medically equals the requirements of listing 1.04A. E.g., Ryan v. Astrue, 5 F. Supp.3d 493, 508 (S.D.N.Y. 2014). As the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record," the Court will "remand the case for . . . a clearer explanation for the decision." Berry, 675 F.2d at 469.

### B. Failure to Properly Weigh Treating Psychiatrist's Opinion (Plaintiff's Point III)

Plaintiff argues that the ALJ erred in giving "no weight" to the mental RFC assessment issued by his treating psychologist, Dr. Eugene Domenico. The Commissioner counters that the ALJ's evaluation of Dr. Domenico's opinion is supported by "good reasons."

"While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted). "An ALJ who refuses to accord controlling weight to the

medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Id. (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). The ALJ must also "give good reasons in [the] notice of determination or decision for the weight" accorded to the treating physician's opinion. Id.

Here, the ALJ noted that Dr. Domenico treated Plaintiff from May 2007, through July 2007, but then Plaintiff ceased treatment with him. (T.25). Plaintiff returned to Dr. Domenico in May 2012, for therapy, at which time Dr. Domenico noted that Plaintiff had "moderate depression." (Id.). The ALJ correctly observed that there were "no treatment notes" from Dr. Domenico from November 21, 2012, through November 14, 2013. (Id. (citing Exhibit 15F). On November 14, 2013, Dr. Domenico again noted that Plaintiff "manifest[ed] moderate symptoms of anxiety and depression." However, no mental status examination was completed; nor were any particular signs and symptoms noted. (T.464).

On November 20, 2013, after apparently not seeing Plaintiff for approximately a year, Dr. Domenico completed a mental RFC assessment (T.466-71) that was so restrictive as to preclude Plaintiff from any gainful employment. According to Dr. Domenico, Plaintiff had marked to extreme limitations in activities of daily living; moderate limitations in maintaining social functioning; frequent to constant deficits in maintaining concentration, persistence or pace; and repeated to continual episodes of decompensation. (T.470). Dr. Domenico rated as fair to poor-or-none Plaintiff's abilities to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and travel in unfamiliar places. (T.469). Dr. Domenico estimated that Plaintiff would be absent more than three times a month due to his impairments or treatment. (T.468).

The ALJ characterized this opinion as "border[ing] on the ridiculous" (T.25), and gave it "no weight." (T.26). In particular, the ALJ noted that Dr. Domenico's finding of "continual" decompensation lacked support in the record; the doctor's assignment of a Global Assessment of Functioning ("GAF") score of 54 undercut his opinion; and the record showed an overall improvement in Plaintiff's anxiety and depression symptoms. (T.25-26). Plaintiff faults the ALJ for focusing too much on the lack of episodes of decompensation and did not address the other

limitations assigned by Dr. Domenico's such as the inability to concentrate for any length of time, his alleged marked to extreme limitations in activities of daily living, and the likely absenteeism due to psychiatric symptoms. Plaintiff contends that the ALJ "effectively threw out Dr. Domenico's entire opinion just because one of the limitations was unsupported." The Court disagrees, as discussed further below.

As an initial matter, Dr. Domenico's statement that Plaintiff was experiencing frequent to continual episodes of decompensation is simply devoid of supporting evidence. A treating source's opinion is accorded "controlling weight" only when it is "well[ ] supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(c)(2). It follows that the lack of evidence in support of a treating source's opinion is a proper factor to be considered by the adjudicator in assessing the weight to be assigned to that opinion. The ALJ's determination on this point was supported by substantial evidence in the record. Plaintiff had no hospitalizations or other in-patient treatment for his mental impairments, and his out-patient treatment for those impairments was sporadic. As noted above, Plaintiff saw Dr. Domenico for three months in 2007, and then discontinued treatment until May 2012, at which time Dr. Domenico characterized Plaintiff's depression as "moderate." Dr. Domenico's treatment

notes from 2012 consistently indicated that Plaintiff had "moderate symptoms of depression and anxiety." (T.331). Then, there was a year-long gap in his treatment with Dr. Domenico between November 21, 2012, and November 14, 2013. During that one-year period, Plaintiff's primary care physician Dr. Frederick Piwko noted that Plaintiff's anxiety and depression "had improved." (Id. (citing Ex. 14F 15, 31)). When Plaintiff returned in 2013, Dr. Domenico again rated his depression and anxiety as moderate, yet six days later, on November 20, 2013, Dr. Domenico issued his extremely restrictive RFC assessment. Less than a week after that, on November 25, 2013, Plaintiff reported to Dr. Piwko that he was "doing well with anxiety" and was "[a]ttending counseling [every] week with Dr. Domenico" and "[f]eels his current meds combo is effective." (T.426). Not only is Dr. Domenico's opinion wholly inconsistent with his own conclusory treatment notes, which lack any mental status exams, it is inconsistent with notations in the records of Plaintiff's other treatment providers, as well as Plaintiff's own testimony after starting treatment, his panic attacks had lessened to about once a month, and lasted only a few minutes to a half hour (T.54–55). See, e.g., Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("A careful review of the record reveals that the ALJ properly applied the treating physician rule. Because Dr. Gupta's medical source statement conflicted with his own treatment notes, the ALJ was not

required to afford his opinion controlling weight."); Micheli v. Astrue, 501 F. App'x 26, 28-29 (2d Cir. 2012) (unpublished opn.) (substantial evidence supported ALJ's decision not to accord controlling weight to treating physician's opinion, where it was internally inconsistent and inconsistent with findings other treating physicians and treatment reports, and claimant reported to physician and other examiners that his back pain was fairly well-controlled with medication without significant side effects).

Relatedly, Plaintiff argues that the improperly gave significant weight to the opinion of consultative psychologist Dr. Renee Baskin. Although Dr. Baskin stated that the "results of the examination appear to be consistent with psychiatric problems and this may interfere with the claimant's ability to function on a daily basis" (T.364), Dr. Baskin found that with regard to his vocational functional capacities, he "would have minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequate with others. (Id.). An ALJ may decide that a consultative examiner's opinion outweighs that of a treating source where, as here, the consultative examiner's conclusions are more consistent with the underlying evidence. See, e.g., Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014)

(unpublished opn.) (ALJ properly relied on evaluations by a consultative examiner to reject treating physician's opinion where other substantial evidence in the record was inconsistent with treating physician's opinion); Suarez v. Colvin, 102 F. Supp.3d 552, 577 (S.D.N.Y. 2015) (ALJ's finding that treating source opinion was entitled to little weight was supported by substantial evidence; having properly rejected it, ALJ was not required to give consultative examiner's opinion less weight even though it more accurately reflects claimant's mental status examination results; because consultative examiner's opinion could constitute substantial evidence and was more consistent with the record as a whole than the treating source opinion, the ALJ did not err in assigning it great weight) (collecting cases).

**C. Inadequate Credibility Assessment (Plaintiff's Point II)**

Plaintiff contends that the ALJ's credibility assessment is based on a distorted and selective view of the evidence. The Commissioner responds that the ALJ properly considered Plaintiff's subjective statements regarding his pain and alleged limitations, and found that they were partially credible and necessitated an RFC limiting him to a range of light work with a sit-stand option every 30 minutes.

In evaluating a claimant's assertions of pain and other limitations, the ALJ must first decide whether the claimant suffers from a medically determinable impairment that could reasonably be

expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); see also Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). If so, the ALJ next must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. Id. Among the factors the ALJ must consider are "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3); see also SSR 96-7P, 1996 WL 374186, at *3.

The ALJ here found that Plaintiff's "allegation of total disability is not credible to the extent alleged[,]" (T.23), primarily because (1) the ALJ found that the medical evidence does not support the degree of limitations alleged by Plaintiff (T.23); and (2) Plaintiff's work record is "not very good" (T.26).

The Second Circuit has observed that "[t]here is no suggestion in SSA regulations that an ALJ may only consider favorable work history in weighing the credibility of claimant testimony." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998), although "[l]ogically,

poor work history could support one of two conclusions." Id. Because "[a] claimant's failure to work might stem from [his] inability to work as easily as [his] unwillingness to work[,]" id., "consideration of work history must be undertaken with great care[,]" id. The Second Circuit has instructed that "[a]n ALJ should explore a claimant's poor work history to determine whether [his] absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether [his] absence is consistent with her claim of disability." Id. Here, the Court cannot say that the ALJ's analysis of Plaintiff's work history was performed as contemplated by Schaal. Moreover, it is not clear that Plaintiff had a "poor" work history. Although Plaintiff only had a few years of work that rose to the substantial gainful activity ("SGA") level, his job history questionnaire indicates that he has been employed fairly steadily since 1999. (T.179). He started working at age 17 in unskilled jobs, then got a job as a primary care aide in an adult care facility in 2004; while working, he returned to school and obtained an associate's degree and then secured a job as a CAD technician in April 2007, where he apparently worked until his motor vehicle accident ("MVA") on March 3, 2008. He attempted work subsequent to the MVA several times (T.39), but was terminated on January 30, 2011, due to excessive absences that he attributed to his impairments. He testified at the hearing that he had to leave these jobs "because

-16-

of the compression on [his] spine which would result in numbness and pain in [his] legs." (Id.).

The only other factor on which the ALJ relied to assess Plaintiff's credibility was the medical evidence. While the regulations note that objective medical evidence is useful to the credibility, they do not allow an ALJ to reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Some of the evidence cited by the Commissioner to show how the medical evidence contradicted Plaintiff's subjective complaints were not mentioned by the ALJ and constitute impermissible post hoc rationalizations not apparent from the face of the ALJ's decision. E.g., Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Here, rather than considering Plaintiff's credibility in light of the required regulatory factors, see 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii), the ALJ merely summarized the medical evidence in the record without meaningfully analyzing how it detracted from Plaintiff's credibility. This error warrants reversal. See, e.g., Kerr v. Astrue, No. 09-CV-01119(GLS)(VEB), 2010 WL 3907121, at *4 (N.D.N.Y. Sept. 7, 2010) ("[T]he ALJ's discussion of the factors was simply a recitation of Plaintiff's testimony without any meaningful analysis of how those factors detracted from her credibility.

Indeed, the ALJ failed to offer any explanation as to why Plaintiff's subjective complaints were found less than fully credible.") (citation omitted).

**V. Conclusion**

For the foregoing reasons, the Commissioner's decision is reversed. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is reversed to the extent that the matter is remanded for further administrative proceedings consistent with this decision and order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 12, 2018
Rochester, New York.